1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11    ELI LILLY AND COMPANY,                    CASE NO. 2:24-cv-00878-LK

                        Plaintiff,              ORDER GRANTING MOTION TO
12                                              DISMISS COUNTERCLAIM
            v.

13
      ALDERWOOD SURGICAL CENTER
14    LLC D/B/A ALLURE ESTHETIC, D/B/A
      GALLERY OF COSMETIC SURGERY,
15    D/B/A SEATTLE PLASTIC SURGERY, et
      al.,

16
                        Defendants.

17

18          This matter comes before the Court on Plaintiff Eli Lilly's Motion to Dismiss Defendants'

19    Abuse of Process Counterclaim. Dkt. No. 36. For the reasons explained below, the motion is

20    granted.[1] The counterclaims are dismissed without leave to amend.[2]

21

22    _____

      [1] Because this matter can be decided based on the written submissions, the Court denies Eli Lilly's request for oral
23    argument. Dkt. No. 36 at 1.

      [2] Eli Lilly only moves to dismiss one of the two counterclaims (the abuse of process counterclaim). *See generally* Dkt.
24    No. 36. But as explained below, the second counterclaim—for declaratory judgment—cannot exist as a freestanding
      claim, and so it is also dismissed.

## I.    BACKGROUND

**A.    Eli Lilly's Complaint**

Plaintiff Eli Lilly and Company is a multinational pharmaceutical company headquartered in Indiana. Dkt. No. 1 at 5. Defendants are medical clinics in the greater Seattle region and two physicians who operate them. *Id.*

Eli Lilly sells Mounjaro and Zepbound, the only FDA-approved drugs containing the active ingredient tirzepatide. Dkt. No. 1 at 2. Mounjaro and Zepbound are prescribed for adults with type two diabetes, obesity, or excess weight and weight-related medical problems. *Id.* Eli Lilly alleges that Defendants improperly use its Mounjaro and Zepbound trademarks to promote the sale of compounded tirzepatide to patients, despite not selling either of Eli Lilly's medicines or being authorized to use Eli Lilly's trademarks. Dkt. No. 1 at 15–19.

On June 20, 2024, Eli Lilly filed a complaint alleging that Defendants' conduct violates the Lanham Act and Washington's Consumer Protection Act (the "CPA"). *Id.* at 5, 20–25. Eli Lilly seeks a declaratory judgment, injunctive relief halting the alleged wrongdoing, an order requiring Defendants to take various corrective actions, and an award of damages and fees. *Id.* at 25–27.

**B.    The Court Dismisses Eli Lilly's CPA Claim, Leaving the Federal Claims Intact**

On March 7, 2025, the Court partially granted Defendants' motion to dismiss. Dkt. No. 34. Specifically, it dismissed Eli Lilly's state law CPA claim (Count 4) but held that the federal trademark and false advertising claims were adequately pleaded. *See id.* Eli Lilly did not amend its complaint further—deciding to proceed only with the federal claims—and Defendants subsequently answered the complaint. Dkt. No. 35.

**C.    Defendants' Counterclaims**

Along with their answer, Defendants filed counterclaims for abuse of process and a declaratory judgment. *Id.* at 10–15.

Defendants' allegations are as follows. They assert that they have the authority to prescribe lawful medicines, including Mounjaro and Zepbound, when appropriate for patient needs and when commercially available. *Id.* at 11. Because Mounjaro and Zepbound were in short supply and were listed on the FDA's drug shortage list until August 5, 2024, the FDA allowed state-licensed pharmacies and physicians to compound tirzepatide during the period of shortage. *Id.* at 11–12.[3] Defendants, who have a licensed physician on staff, lawfully compounded tirzepatide-based drugs under Section 503A of the Federal Food, Drug, and Cosmetic Act. *Id.* at 12. They also allege that Eli Lilly's production limitations restricted its ability to profit, because it could not meet market demand. *Id.*

Based on those allegations, Defendants assert two claims: a state law abuse of process claim and a declaratory judgment claim. The former alleges that Eli Lilly has misused court procedures to damage Defendants' reputation, goodwill, and professional standing by falsely alleging that they "are prescribing unsafe and ineffective treatments." *Id.* at 12–13. Defendants argue that although Eli Lilly's claims focus on trademark misuse—and not the safety or propriety of compounded medicines—Eli Lilly nonetheless used this lawsuit to target Defendants' compounding practices in order to undermine patient confidence and to create settlement leverage. *Id.* at 13. More broadly, Defendants assert that this lawsuit is part of a larger campaign against compounded medications. *Id.* at 12–13. They allege that they have suffered harms including increased legal costs, reputational damage, loss of goodwill, and business interference, *id.* at 14, and seek damages and injunctive relief. *Id.* at 15. Defendants' second claim—for a declaratory judgment—seeks a court order declaring that their "advertising is fair use and . . . [did] not infringe

---

[3] In December 2024, the FDA indicated that it would take no action against state-licensed pharmacies or physicians compounding, distributing or dispensing tirzepatide injections for violations of the Federal Food, Drug, and Cosmetic Act arising from the inclusion of the drug on the FDA's drug shortage list until February 18, 2025. *Id.* at 12. That period was extended to March 5, 2025 due to litigation. *Id.*

1    Plaintiffs' asserted trademarks," and that their advertising is not false or deceptive. *Id.* at 14–15.

2    Eli Lilly's motion to dismiss the abuse of process counterclaim followed. Dkt. No. 36.

3                                    **II.    DISCUSSION**

4    **A.    Jurisdiction**

5            The Court has supplemental jurisdiction over Defendants' state law abuse of process

6    counterclaim[4] because it arises from the same underlying facts as Eli Lilly's federal claims. *See*

7    28 U.S.C. § 1367(a); *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) ("A state law

8    claim is part of the same case or controversy when it shares a common nucleus of operative fact

9    with the federal claims and the state and federal claims would normally be tried together."

10   (quotation marks omitted)).

11   **B.    Legal Standards**

12           When deciding a motion under Federal Rule of Civil Procedure 12(b)(6), a court must

13   assume the truth of the pleading's actual allegations and credit all reasonable inferences arising

14   from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The court "need not

15   accept as true conclusory allegations that are contradicted by documents referred to in the

16   [pleading]." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

17   Instead, the plaintiff must point to factual allegations that "state a claim to relief that is plausible

18   on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible

19   "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

20   that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

21   (2009). Although "detailed factual allegations" are not required, the pleading must include "more

22   than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A pleading "that offers

23   _____

24   [4] The declaratory judgment claim is not relevant for subject matter jurisdiction purposes because, as explained below, that claim is not a separate, substantive claim for relief.

1   'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not

2   do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

3   **C.    Defendants' Abuse of Process Counterclaim is Dismissed**

4          Under Washington law, the elements of an abuse of process claim are "(1) the existence of

5   an ulterior purpose—to accomplish an object not within the proper scope of the process—and

6   (2) an act in the use of legal process not proper in the regular prosecution of the proceedings." *Sea-*

7   *Pac Co. v. United Food & Com. Workers Loc. Union 44*, 699 P.2d 217, 220 (Wash. 1985) (quoting

8   *Fite v. Lee*, 521 P.2d 964, 968 (Wash. Ct. App. 1974)). "[T]he crucial inquiry is whether the

9   judicial system's process, made available to insure the presence of the defendant or his property

10  in court, has been misused to achieve another, inappropriate end." *Gem Trading Co. v. Cudahy*

11  *Corp.,* 603 P.2d 828, 832 n.2 (Wash. 1979). "[T]he mere institution of a legal proceeding even

12  with a malicious motive does not constitute an abuse of process"; "[t]hus, there must be an act

13  after filing suit using legal process empowered by that suit to accomplish an end not within the

14  purview of the suit." *Sea-Pac*, 699 P.2d at 220–21 (citation modified). Accordingly

15         Some definite act or . . . objective not legitimate in the use of the process, is
           required; and there is no liability where the defendant has done nothing more than
16         carry out the process to its authorized conclusion, even though with bad intentions.
           The improper purpose usually takes the form of coercion to obtain a collateral
17         advantage, not properly involved in the proceeding itself, such as the surrender of
           property or the payment of money, by the use of the process as a threat or a club.
18
    *Batten v. Abrams*, 626 P.2d 984, 989 (Wash. Ct. App. 1981).
19
           Eli Lilly argues that Defendants' abuse of process counterclaim fails on both elements: it
20
    does not plausibly allege that Eli Lilly used this action for an ulterior purpose, and does not
21
    plausibly allege an improper act. Dkt. No. 36 at 3–4. The Court need not reach both, because there
22
    are no plausible allegations of an improper act, which is dispositive here. Indeed, this is far from
23
    a close call. *See* LCR 11(c).
24

1   As noted above, merely filing a lawsuit—even with a malicious motive, and even if the

2   allegations are baseless or vexatious—is not sufficient to make out a claim for abuse of process.

3   *Batten*, 626 P.2d at 990; *see also Fite*, 521 P.2d at 968. Instead, the "improper act" must be "an

4   act after filing suit using legal process empowered by that suit to accomplish an end not within the

5   purview of the suit." *Sea-Pac*, 699 P.2d at 220–21 (citation modified).

6   The counterclaim alleges that the "improper act" here is Eli Lilly's decision to use this

7   lawsuit to "improperly demand[] that Defendants enter formal admissions of wrongdoing that

8   would impair Defendants' licenses and ability to practice medicine." Dkt. No. 35 at 13.[5] Assuming

9   without deciding that settlement demands can be an "improper act" (Eli Lilly argues that they

10   cannot be, *see* Dkt. No. 39 at 4), this settlement attempt was not improper. As Eli Lilly points out,

11   its complaint seeks a declaration that Defendants knowingly and willfully infringed on its

12   trademarks and engaged in false advertising practices. Dkt. No. 1 at 25. The complaint also asks

13   the Court to order Defendants "to engage in corrective advertising by informing consumers" that

14   they were never affiliated with Eli Lilly, that their compounded drugs are not the same as or generic

15   versions of Zepbound and Mounjaro, and that the compounded drugs have not been approved or

16   reviewed by the FDA or tested for safety, quality, or effectiveness in clinical trials. *Id.* at 26.

17   Against that backdrop, Eli Lilly's settlement demand—that Defendants formally admit

18   wrongdoing—simply seeks some of the relief that it is asking for in the complaint. The type of

19

20   ---

[5] Defendants' response brief calls this "just one example" of an improper act that Eli Lilly engaged in, but it is really the only arguable example. Dkt. No. 37 at 12. The gist of the other "improper acts" is that Eli Lilly has engaged in
21   expansive discovery beyond the scope of what is relevant to its claims, which makes this lawsuit expensive and perhaps increases settlement pressure. *Id.* at 13–14; *see also* Dkt. Nos. 38-1, 38-2 (discovery requests). Oddly, Defendants advance this argument despite the fact that the present motion is limited to the pleadings, and the allegedly
22   improper discovery requests were submitted *after* pleadings were closed. *Compare* Dkt. No. 35 (May 23, 2025) *with* Dkt. No. 38 at 1–2 (noting that discovery requests were served on June 3, 2025). Regardless, overbroad discovery is
23   not an abuse of process; Defendants may move for a protective order if they believe Eli Lilly's requests are not permissible under the Federal Rules. And the accusations of unsafe practices in the complaint and/or briefing are also
24   not an "improper act"—even if Defendants think those allegations are baseless. *See Batten*, 626 P.2d at 990.

"improper act" that might give rise to an abuse of process claim is one that is "a form of extortion"—using the process (i.e., the litigation) to achieve something that the party could not seek as part of that process. *See Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.)*, 82 P.3d 1199, 1217 (Wash. Ct. App. 2004). By contrast, the demand that Defendants formally admit wrongdoing cannot be an improper act because it sought the same end goal that the litigation was "designed to accomplish." *Id.*

"[A]buse of process claims are exceptionally rare," and are generally limited to "unlawful, quid pro quo situations." *Maytown Sand & Gravel, LLC v. Thurston Cnty.*, 423 P.3d 223, 248 (Wash. 2018) (en banc), *as amended* (Oct. 1, 2018), *and abrogated on other grounds by Yim v. City of Seattle*, 451 P.3d 694 (Wash. 2019). This is not one of those rare situations, and Defendants' abuse of process counterclaim is therefore dismissed.

**D.     Defendants' Declaratory Judgment Counterclaim is Dismissed for Lack of an Underlying Cause of Action**

"[T]he Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022); *see also Longview Tugboat Co. v. Jameson*, 218 F.2d 547, 548 (9th Cir. 1955) ("The Declaratory Judgment Act is limited in its operation to those cases which would be within the jurisdiction of the federal courts if affirmative relief were being sought." (citation modified)). Here, Defendants' declaratory judgment claim does not rest on an affirmative cause of action. The Court thus dismisses the claim for lack of an underlying cause of action.[6]

---

[6] Even if the declaratory judgment counterclaim were not dismissed for this reason, the Court would strike it under Rule 12(f) because it merely repackages Defendants' affirmative defenses, making it redundant. *Lincoln Nat. Corp. v. Steadfast Ins. Co.*, No. 06-CV-00058, 2006 WL 1660591, at *2 (N.D. Ind. June 9, 2006) ("repetitious and unnecessary pleadings, such as a counterclaim that merely restates an affirmative defense, or which seeks the opposite effect of the complaint, should be stricken regardless of whether prejudice has been shown."); *Righthaven LLC v. Choudhry*, No. 2:10-CV-2155 JCM PAL, 2011 WL 1743839, at *5 (D. Nev. May 3, 2011) ("courts have stricken counterclaims under Rule 12(f), if those claims raise the same facts or legal issues as those asserted in the pleadings").

### III.  CONCLUSION

For the reasons stated above, the Court GRANTS Eli Lilly's motion to dismiss. Dkt. No. 36. The Court further finds that leave to amend these claims based on Eli Lilly's actions as reflected in the current record before the Court would be futile.[7]

Dated this 23rd day of July, 2025.

Lauren King
United States District Judge

---

[7] The Court notes that Federal Rule of Civil Procedure 15(d) permits supplemental pleadings based on events that occur after the relevant pleading is filed.

ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM - 8