UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELI LILLY AND COMPANY,<br><br>               Plaintiff,<br>    v.<br><br>ALDERWOOD SURGICAL CENTER LLC D/B/A ALLURE ESTHETIC, D/B/A GALLERY OF COSMETIC SURGERY, D/B/A SEATTLE PLASTIC SURGERY, et al,<br><br>               Defendants. | CASE NO. 2:24-cv-00878-LK<br><br>ORDER DENYING JOINT MOTION TO APPROVE AND ENTER CONSENT JUDGMENT AND PERMANENT INJUNCTION |

This matter comes before the Court on the parties' Joint Motion to Approve and Enter Consent Judgment and Permanent Injunction. Dkt. No. 44. The Motion suffers from numerous defects, discussed in detail below, so the Court DENIES the Motion in full.

**I.  BACKGROUND**

Plaintiff Eli Lilly and Company is a pharmaceutical company headquartered in Indiana. Dkt. No. 1 at 5. Defendants are medical clinics in the greater Seattle region and two physicians who operate them. *Id.* at 5–6. Eli Lilly sells Mounjaro and Zepbound, the only FDA-approved

ORDER DENYING JOINT MOTION TO APPROVE AND ENTER CONSENT JUDGMENT AND PERMANENT INJUNCTION - 1

drugs containing the active ingredient tirzepatide. *Id.* at 2. Mounjaro and Zepbound are prescribed for adults with type two diabetes, obesity, or excess weight and weight-related medical problems. *Id.* On June 20, 2024, Eli Lilly filed a complaint alleging that Defendants improperly used its Mounjaro and Zepbound trademarks to promote the sale of compounded tirzepatide to patients, despite not selling either of Eli Lilly's medicines or being authorized to use Eli Lilly's trademarks, violating the Lanham Act and Washington's Consumer Protection Act (the "CPA"). *Id.* at 5, 20–25. Eli Lilly sought a declaratory judgment, injunctive relief halting the alleged wrongdoing, an order requiring Defendants to take various corrective actions, and an award of damages and fees. *Id.* at 25–27.

Defendants filed a motion to dismiss, arguing that the federal trademark claims failed to state a claim for relief and that the federal Food, Drug, and Cosmetic Act ("FDCA") preempted the state law claim and otherwise barred Eli Lilly's federal false advertising claim. Dkt. No. 24. On March 7, 2025, the Court partially granted Defendants' motion, dismissing Eli Lilly's state law CPA claim (Count 4) but holding that the federal trademark and false advertising claims were adequately pleaded. Dkt. No. 34. Eli Lilly did not amend its complaint further—deciding to proceed only with the federal claims—and Defendants subsequently answered the complaint. Dkt. No. 35. Along with their answer, Defendants filed counterclaims for abuse of process and seeking a declaratory judgment. *Id.* at 10–15. Eli Lilly filed a motion to dismiss the counterclaims, Dkt. No. 36, which the Court granted on July 23, 2025, Dkt. No. 40.

On August 4, 2025, the parties informed the Court that they had reached settlement, so the Court vacated the trial date and all remaining pretrial deadlines. Dkt. No. 43. On August 22, 2025, the parties filed a Joint Motion to Approve Consent Judgment and Enter Permanent Injunction, which is now before the Court. Dkt. No. 44.

## II.  ANALYSIS

The Joint Motion to Approve Consent Judgment and Enter Permanent Injunction requests that the court enter both a consent judgment and a permanent injunction. Dkt. No. 44. Because those requests face different legal standards, the Court addresses them separately.

### A.  The Court Lacks Material Information about the Proposed Consent Judgment.

A consent judgment, unlike a stipulated dismissal pursuant to a settlement agreement, is a final judgment on the merits. While the remedy for breach of a settlement agreement is a new contract action, a consent judgment keeps the issuing court involved by allowing parties to enforce their agreement through contempt proceedings. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) ("[I]f the parties' obligation to comply with the terms of the settlement agreement had been made part of the [court's] order . . . [then] a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist."); *see also United States ex rel. Tri–City Elec. Co. of Iowa v. Alacran/O & SJV, LLC*, No. 4:11–cv–04109-SLD-JEH, 2014 WL 5473138, at *2 (C.D. Ill. Oct. 29, 2014) (remarking that consent judgments "extend the court's equitable jurisdiction to the enforcement of the terms of the parties' contract—however long that may take"). Because a consent judgment requires the Court to expend time and resources to supervise a private settlement agreement, in choosing whether such a judgment should issue, district courts must ensure that the "proposed consent judgment . . . is fair, reasonable and equitable and does not violate the law or public policy." *Sierra Club, Inc. v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990). Moreover, "[c]onsent decrees entered in federal court must be directed to protecting federal interests"—in other words, they "must further the objectives of the law upon which the complaint was based." *Frew v. Hawkins*, 540 U.S. 431, 437 (2004).

The parties have not addressed any of this. Nor have they addressed why a stipulated motion to dismiss would be insufficient. "We have been left entirely in the dark about any reasons the parties may have for why [a] consent decree[] represent[s] [a] superior vehicle[] for [this] settlement[] compared to [a] simple stipulated dismissal[]." *Duncanson v. Wine & Canvas IP Holdings LLC*, No. 1:16-CV-00788-SEB-DML, 2020 WL 2840010, at *3 (S.D. Ind. May 29, 2020).

"Unlike a stipulated dismissal, which parties may take as of right, litigants [seeking a] consent judgment must argue why the judgment should issue, and cannot expect the court unreflectively to endorse their agreement with the full authority of the federal judiciary." *Touchstone Life Essentials v. Healed LLC*, No. 24-cv-03386-PAB, 2025 WL 345299, at *2 (D. Colo. Jan. 30, 2025) (quoting *Alacran*, 2014 WL 5473138, at *3); *see also Metro. Life Ins. Co. v. Hanni*, No. 1:17-CV-80-TLS, 2017 WL 6805318, at *2 (N.D. Ind. Sept. 14, 2017) (a consent judgment "cannot just be stipulated by the parties"; instead, it may be granted by the court only "if it is consistent with the law, does not harm third parties, and is an appropriate use of judicial resources"). "[D]istrict courts do not simply 'rubber stamp' litigants' proposed consent decrees." *Nutramax Labys. v. Abumayyaleh Bros LLC*, No. 1:24-cv-01047-SEB-MKK, 2025 WL 107670, at *2 (S.D. Ind. Jan. 15, 2025). Because the parties left the Court entirely in the dark, the Court cannot determine whether the proposed consent judgment is "fair, reasonable and equitable and does not violate the law or public policy," *Sierra Club,* 909 F.2d at 1355, or whether it is "directed to protecting federal interests," *Frew*, 540 U.S. at 437.

Moreover, the proposed consent judgment raises other issues. For one, it declares that Eli Lilly "has valid and enforceable rights in and to, the trademarks MOUNJARO® and ZEPBOUND®" and "[t]he federal trademark registrations for the Lilly Marks identified below are valid, subsisting, and enforceable." Dkt. No. 44-1 at 2. It is both premature for the Court to make

ORDER DENYING JOINT MOTION TO APPROVE AND ENTER CONSENT JUDGMENT AND PERMANENT INJUNCTION - 4

such a finding given the "lack[ of] factual basis and foundation" provided by the parties, *Minnesota v. CMI Kentucky, Inc.*, No. 08-603 (DWF/AJB), 2009 WL 5216841, at *2 (D. Minn. Feb. 9, 2009), and also not clear that such a finding would be appropriate given the stage of this litigation, *Broadcast Music, Inc. v. Butcher Enter., Inc.*, No. 18-cv-03171-KLM, 2019 WL 3456915, at *3 (D. Colo. July 31, 2019). The record before the Court is minimal; litigation progressed only through two motions to dismiss, Dkt. Nos. 24, 36—decisions that did not involve the merits of Eli Lilly's case, Dkt. Nos. 34, 40. Because of that, "there has been no meaningful showing that the Plaintiff's [] claims are colorable" beyond the standard for pleading a claim, "much less significant enough to warrant . . . judicial supervision of this matter." *Funimation Entm't v. Timmons*, No. 13-cv-00533-MSK-MJW, 2014 WL 6873061, at *1 (D. Colo. Oct. 24, 2014).

Additionally, the parties do not provide the Court with their settlement agreement despite asking the Court to "retain jurisdiction . . . to implement and/or enforce" it. Dkt. No. 44-1 at 5. Without knowing the terms of that settlement agreement, the Court cannot determine "if it is consistent with the law" and "not harm[ful] [to] third parties," *Metro. Life*, 2017 WL 6805318, at *2, such that retaining jurisdiction to enforce it is permissible. *See e.g., Broadcast Music*, 2019 WL 3456915, at *3 ("[T]he parties' failure to provide the . . . Settlement Agreement leaves the Court unable to satisfy itself" that the requisite standards are met); *Mulhern v. ADT Sec. Servs., LLC*, No. 2:18-CV-229-TLS, 2019 WL 6307233, at *2 (N.D. Ind. Nov. 25, 2019) ("To the extent that the parties intend for the terms within the 'confidential settlement agreement' to be enforceable through a consent decree, all such terms must be included in the proposed Consent Order and Decree."). Therefore, the Court denies the parties' motion as to the consent judgment.

**B.      The Parties Failed to Demonstrate That a Permanent Injunction is Appropriate.**

Next, the Court considers the parties' request for entry of a permanent injunction, which the Court denies for several reasons. First, the request is inextricably intertwined with the request

for consent judgment, *see generally* Dkt. Nos. 44, 44-1, which the Court has denied. *See e.g.*, *CMI Kentucky*, 2009 WL 5216841, at *3 ("[T]he request for a permanent injunction also depends on the Court's approval of the consent judgment. As the Court has declined to adopt many aspects of the proposed consent judgment, the Court will not approve and enter a permanent injunction at this time."). Second, to obtain a permanent injunction, a movant must show that (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of the hardships, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The parties did not address these factors, stating only that "there is good cause for the Court to grant this motion and enter the Permanent Injunction" because "[t]he parties have agreed to resolve this case and have entered into a binding settlement agreement." Dkt. No. 44 at 2. The parties' desire to have the Court enforce their settlement agreement is insufficient; "a federal court is more than a recorder of contracts from whom parties can purchase injunctions." *Local No. 93, Int'l Ass'n of Firefighters, v. City of Cleveland*, 478 U.S. 501, 525 (1986) (citation modified).

The Court also takes issue with several portions of the proposed permanent injunction. First, the parties provide no basis for the Court to find that the "Permanent Injunction shall be deemed to have been served on Defendants and all of their subsidiaries, affiliates, divisions, operating companies, related entities, officers, agents, servants, employees and attorneys as of the date of entry hereof by the Court," nor do the parties detail any rationale for (or ramifications of) that finding. Dkt. No. 44-1 at 5. Second, the parties fail to explain why it is appropriate for the Court to use its resources to "retain jurisdiction to entertain such further proceedings" in this case, especially as it pertains to "the Parties' confidential settlement agreement" that is not provided to the Court. *Id.* Accordingly, the Court denies the parties' motion as to the permanent injunction.

### III. CONCLUSION

"The district court should not enter a consent decree whenever it strikes two parties' fancy, nor can the parties simply stipulate to the entry of a consent decree." *Duncanson v. Wnc of Cincinnati LLC*, No. 1-16-CV-00788-SEB-DML, 2020 WL 4043175, at *1 (S.D. Ind. July 17, 2020) (citation modified). Furthermore, the Court questions whether continued oversight of a settlement between two private parties "is an appropriate commitment of the court's limited resources." *Kasper v. Board of Election Comm's*, 814 F.2d 332, 338 (7th Cir. 1987). For the foregoing reasons, the Court DENIES the parties' Joint Motion to Approve and Enter Consent Judgment and Permanent Injunction, Dkt. No. 44, without prejudice.

Dated this 22nd day of September, 2025.

Lauren King
United States District Judge