UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELI LILLY AND COMPANY,<br><br>                      Plaintiff,<br>     v.<br><br>ALDERWOOD SURGICAL CENTER LLC D/B/A ALLURE ESTHETIC, D/B/A  GALLERY OF COSMETIC SURGERY,  D/B/A SEATTLE PLASTIC SURGERY, et al.,<br><br>                    Defendants. | CASE NO. 2:24-cv-00878-LK<br><br>ORDER DENYING UNOPPOSED MOTION FOR APPROVAL AND ENTRY OF CONSENT JUDGMENT AND PERMANENT INJUNCTION; DENYING JOINT MOTION TO SEAL |

This matter comes before the Court on the Eli Lilly's Renewed Motion for Approval and Entry of Consent Judgment and Permanent Injunction, Dkt. No. 50; Eli Lilly's sealed version of that motion, Dkt. No. 51; and the parties' Joint Motion to Seal, Dkt. No. 49. For the reasons stated below, the Court denies the motions.

## I.   BACKGROUND

Plaintiff Eli Lilly and Company is a pharmaceutical company headquartered in Indiana. Dkt. No. 1 at 5. Defendants are medical clinics in the greater Seattle region and two physicians

who operate them. *Id.* at 5–6. Eli Lilly sells Mounjaro and Zepbound, the only FDA-approved drugs containing the active ingredient tirzepatide. *Id.* at 2. Mounjaro and Zepbound are prescribed for adults with type two diabetes, obesity, or excess weight and weight-related medical problems. *Id.* On June 20, 2024, Eli Lilly filed a complaint alleging that Defendants improperly used its Mounjaro and Zepbound trademarks to promote the sale of compounded tirzepatide to patients, despite not selling either of Eli Lilly's medicines or being authorized to use those trademarks, violating the Lanham Act and Washington's Consumer Protection Act (the "CPA"). *Id.* at 5, 20–25. Eli Lilly sought a declaratory judgment, injunctive relief halting the alleged wrongdoing, an order requiring Defendants to take various corrective actions, and an award of damages and fees. *Id.* at 25–27.

Defendants moved to dismiss, arguing in relevant part that Eli Lilly's CPA claim was preempted by the Food, Drug, and Cosmetic Act ("FDCA"). As Eli Lilly acknowledged in its response, the FDCA vests the power to regulate the marketing of prescription drugs in the federal government, and is aimed at protecting the public by ensuring that drugs sold in the marketplace are safe, effective, and not misbranded. 21 U.S.C. § 337(a); Dkt. No. 28 at 10; *see also* kk *ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 612 (9th Cir. 2016) ("[W]hereas the FDCA protects public health by relying on the FDA's expertise, Lanham Act claims . . . protect commercial interests by relying on the market expertise of competitors."). Eli Lilly argued that its claims were "not based on Alderwood violating the FDCA, but rather Alderwood falsely advertising its compounded drugs as clinically tested and FDA-approved like [Eli] Lilly's medicines." Dkt. No. 28 at 10. But the Court found that "Eli Lilly veer[ed] into FDCA territory" in its complaint by asserting that Defendants' unspecified "deceptive conduct and *regulatory non-compliance*" enabled them to "obtain an unfair and illegal business advantage over [Eli] Lilly." Dkt. No. 34 at 12 (quoting Dkt. No. 1 at 24 (emphasis in order)). Because "[t]he FDCA's

ORDER DENYING UNOPPOSED MOTION FOR APPROVAL AND ENTRY OF CONSENT JUDGMENT AND PERMANENT INJUNCTION; DENYING JOINT MOTION TO SEAL - 2

prohibition of private rights of action prevents Eli Lilly from litigating non-compliance with its regulations," and because the shotgun-style complaint incorporated this allegation by reference into Eli Lilly's CPA claim, the Court dismissed that claim. *Id*. Eli Lilly did not amend its complaint despite being given leave to do so. *Id*. at 13.

On August 22, 2025, the parties filed a Joint Motion to Approve and Enter Consent Judgment and Permanent Injunction. Dkt. No. 44. In that motion, the parties failed to address the considerations relevant to the entry of a consent decree or explain "why a stipulated motion to dismiss would be insufficient," failed to provide sufficient factual basis or foundation for the declaration of trademark rights sought, and failed to submit the settlement agreement that they requested the Court retain jurisdiction to enforce. Dkt. No. 45 at. at 3–5. Additionally, the parties failed to address the factors required for award of a permanent injunction and otherwise submitted deficient briefing. *Id*. at 5–6. The Court denied the motion. *Id*. at 7.

On October 30, 2025, Eli Lilly filed under seal an Unopposed Renewed Motion for Approval and Entry of Consent Judgment and Permanent Injunction, Dkt. No. 51, with the parties' settlement agreement attached, Dkt. No. 51-2, also under seal. The parties simultaneously filed a joint motion to seal that motion and the attached settlement agreement. Dkt. No. 49. Eli Lilly also filed a redacted version of its motion, Dkt. No. 50, that does not attach the settlement agreement, *see* Dkt. No. 50-1.

## II.    DISCUSSION

### A.    Motion to Seal

#### 1.  Legal Standard

Courts have recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)).

ORDER DENYING UNOPPOSED MOTION FOR APPROVAL AND ENTRY OF CONSENT JUDGMENT AND PERMANENT INJUNCTION; DENYING JOINT MOTION TO SEAL - 3

Accordingly, when a district court considers a sealing request, "a strong presumption in favor of access is the starting point." *Id.* (citation modified). This presumption, however, "is not absolute and can be overridden given sufficiently compelling reasons for doing so." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).

The standard for determining whether to seal a record depends on the filing with which the sealed record is associated and whether such filing is "more than tangentially related to the merits of a case." *See Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1098–1102 (9th Cir. 2016). If the filing at issue is more than tangentially related to the merits of the case, the court must apply the "compelling reasons" standard to the motion to seal. *See id.* If the filing is only tangentially related to the merits, the party seeking to seal the records need only show "good cause." *See id.*

Under even the lower "good cause" standard, the party seeking protection must show "specific prejudice or harm" for each document it seeks to protect. *Foltz*, 331 F.3d at 1130. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986)). And a "good cause" showing will not, without more, satisfy the more exacting "compelling reasons" test. *Kamakana*, 447 F.3d at 1180. Under the "compelling reasons" standard, the Court "may seal records only when it finds a compelling reason and articulates the factual basis for its ruling, without relying on hypothesis or conjecture." *Ctr. for Auto Safety*, 809 F.3d at 1096–97 (citation modified). Those compelling reasons must "outweigh the general history of access and the public policies favoring disclosure[.]" *Kamakana*, 447 F.3d at 1178–79.[1] This is achieved when, for example, a court filing might

---

[1] This remains true at the settlement stage:"[a]s in the cases involving trial rulings or evidence admitted, the court's approval of a settlement or action on a motion are matters which the public has a right to know about and evaluate." *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986); *see also Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) ("It is immaterial whether the sealing of the record is an integral part of a negotiated settlement between the parties . . . Once a matter is brought before a court for resolution,

ORDER DENYING UNOPPOSED MOTION FOR APPROVAL AND ENTRY OF CONSENT JUDGMENT AND PERMANENT INJUNCTION; DENYING JOINT MOTION TO SEAL - 4

"become a vehicle for improper purposes," *Nixon*, 435 U.S. at 598, or be used "to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets," *Kamakana*, 447 F.3d at 1179.

The settlement agreement is more than tangentially related to the merits, especially considering that the parties attach it to their proposed consent decree (i.e., a permanent injunction), so the compelling reasons standard applies. *See In re Amazon Return Policy Litig.*, No. 2:23-cv-1372, 2026 WL 1162713, at *1 (W.D. Wash. Apr. 29, 2026) ("The Court finds the compelling interest test more appropriate given that the proposed settlement agreement and the declaration supporting it are more than tangentially related to the merits of the case."); *Carijano v. Occidental Petroleum Corp.*, No. CV075068PSGPJWX, 2019 WL 6896921, at *4 (C.D. Cal. June 20, 2019) ("[I]t appears that courts in the Circuit have uniformly held that the compelling reasons standard should apply to approvals of settlements.").[2]

### 2. The Parties Have Not Established Compelling Reasons to Seal

The parties provide three purportedly compelling reasons to override the presumption of disclosure. First, the parties argue that disclosure would harm Eli Lilly's ability to settle various other lawsuits "against retailers of compounded tirzepatide drugs that are currently pending" because this settlement agreement would provide those other retailers with the "terms" that Eli Lilly "accepted to settle this case, which each defendant could use as strategic negotiating leverage during settlement discussions." Dkt. No. 49 at 4–5. Second, the parties argue that sealing is necessary because the settlement agreement contains "Defendants' competitively sensitive financial information, including the identities of third parties with whom they have confidential

---

it is no longer solely the parties' case, but also the public's case."). "Unlike private materials unearthed during discovery, judicial records are public documents almost by definition, and the public is entitled to access by default." *Kamakana*, 447 F.3d at 1180.

[2] The parties agree that the compelling reasons standard applies. Dkt. No. 49 at 4. However, even if the Court applied the lower good cause standard, it would find that the parties failed to make such a showing.

ORDER DENYING UNOPPOSED MOTION FOR APPROVAL AND ENTRY OF CONSENT JUDGMENT AND PERMANENT INJUNCTION; DENYING JOINT MOTION TO SEAL - 5

business relationships and financial data regarding their compounded tirzepatide business," the disclosure of which "would harm Defendants' competitive standing in the market for compounded tirzepatide drugs by providing their competitors with non-public information concerning their suppliers and pricing models." *Id.* at 5. Third, the parties argue that their "private interest in keeping the settlement agreement confidential outweighs any interest the public could have in disclosure." *Id.*

As a threshold matter, the Court notes that the parties' request to conceal their settlement agreement—which again, is attached to and purportedly made part of their proposed consent decree—from public view underscores that it is fundamentally a private contract directed towards satisfying each side's private interests, rather than one that is "directed to protecting federal interests." *Frew v. Hawkins*, 540 U.S. 431, 437 (2004). The presumption of public access to court records is "especially strong" in the context of consent decrees because "[a] court's decrees, its judgments, its orders, are the quintessential business of the public's institutions." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996). Here, though, despite arguing that the terms of the proposed consent decree serve public and federal interests, the parties seek to keep key terms (such as the settlement amount) hidden from the public to advance their private interests. And they seek to do so in derogation of the requirement that consent decrees "describe in reasonable detail—*and not by reference to the complaint or other document*—the act or acts sought to be restrained." Fed. R. Civ. P. 65(d)(1) (emphasis added).

The parties' first argument—that litigants in other cases may use the settlement agreement in this case as "strategic negotiating leverage" against Eli Lilly, *id.* at 5—does not compel sealing. That "disclosure might harm [Defendant] by exposing it to additional liability and litigation," is not a compelling reason against disclosure—"a litigant is not entitled to the court's protection from this type of harm." *Foltz*, 331 F.3d at 1137. "The mere fact that the production of records may lead

ORDER DENYING UNOPPOSED MOTION FOR APPROVAL AND ENTRY OF CONSENT JUDGMENT AND PERMANENT INJUNCTION; DENYING JOINT MOTION TO SEAL - 6

to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179.

The parties next argue that sealing is necessary due to the presence of "Defendants' competitively sensitive financial information" in the settlement agreement. Dkt. No. 49 at 5. This purportedly sensitive information is "non-public information concerning [Defendants'] suppliers and pricing models." *Id.* The parties aver that disclosure of this information "would harm Defendants' competitive standing in the market for compounded tirzepatide drugs[.]" *Id.* The parties do not specifically identify which portions of the settlement agreement contain this information. *See generally id.* Having closely reviewed the filings, the Court only identifies potentially sensitive information related to Defendants in the Declaration of Javad Sajan, MD, which is attached to the settlement agreement. Dkt. No. 51-2 at 17–19. This information is (1) the names and contact information of suppliers from which Defendants prescribed the relevant drugs, (2) the number of "unique patients" to whom and "unique occasions" on which the relevant drugs were prescribed, (3) the upper limit of gross revenue derived by Defendants from the prescription of the relevant drugs, (4) the upper limit of cost of the relevant drugs administered or made available by Defendants, and (5) the upper limit of net profit derived by Defendants from the sale of the relevant drugs. *Id.* at 17–18. The parties have not established that this information is entitled to protection, and the Court observes that the information is substantially different from the technical marketing strategies and data that courts have agreed to seal to avoid "competitive harm." *See, e.g.*, *Clean Crawl, Inc. v. Crawl Space Cleaning Pros, Inc.*, No. C17-1340-BHS, 2019 WL 6829886, at *2 (W.D. Wash. Dec. 13, 2019) (granting motion to seal confidential business information and deposition testimony that include "marketing and advertising techniques and budgets"); *Treehouse Avatar LLC v. Valve Corp.*, No. C17-1860-RAJ, 2019 WL 291664, at *2 (W.D. Wash. Jan. 23, 2019) (granting motion to seal "proprietary technical business information

that is not already in the public domain"); *Algarin v. Maybelline, LLC*, No. 12-cv-3000-AJB (DHB), 2014 WL 690410, at *3 (S.D. Cal. Feb. 21, 2014) (granting motion to seal "compilation of sales data, market research, consumer research, advertising data and marketing strategy"). Notably, the Sajan Declaration provides only upper limits on revenue, cost, and profit data; no precise numbers are included, and data is not tied to a particular supplier. *See* Dkt. No. 51-2 at 17–18. The parties fail to detail what, if anything, "their competitors" could do with this "non-public information concerning [Defendants'] suppliers and pricing model." Dkt. No. 49 at 5. "[C]onclusory offerings"—such as those made by the parties here—"do not rise to the level of 'compelling reasons' sufficiently specific to bar the public access to the documents." *Kamakana*, 447 F.3d at 1182; *see also Tevra Brands LLC v. Bayer HealthCare LLC*, No. 19-cv-04312-BLF, 2020 WL 1245352, at *3 (N.D. Cal. Mar. 16, 2020) (denying request to seal based on blanket claims that parties' "competitive standing[s] could be significantly harmed" by disclosure); *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. C10-03724-CW, 2013 WL 4426507, at *2 (N.D. Cal. Aug. 14, 2013) ("[S]uch broad and generic statements do not meet the standard for sealing information[.]").

The Court is also unpersuaded by the parties' third reason for sealing the settlement agreement. As noted above, the parties assert, without further elaboration, that their "private interest in keeping the Settlement Agreement confidential outweighs any interest the public could have in disclosure." Dkt. No. 49 at 5. They also argue that sealing is the least restrictive means to protect their confidential information because "the parties specifically negotiated for a comprehensive confidentiality provision prohibiting public disclosure of the Settlement Agreement's terms," meaning that sealing is the "only way to provide the parties with the benefit of their bargain for confidentiality." *Id.* at 6 (citation modified). But "the mere fact that the parties' settlement agreement may contain a confidentiality provision, without more, does not constitute a

compelling reason to seal the information." *Helix Env't Plan., Inc. v. Helix Env't & Strategic Sols.*, No. 3:18-cv-02000-AJB-AHG, 2021 WL 120829, at *2 (S.D. Cal. Jan. 13, 2021); *see also Hotel Rittenhouse*, 800 F.2d at 346 ("Even if we were to assume that some settlements would not be effectuated if their confidentiality was not assured, the generalized interest in encouraging settlements does not rise to the level of interests that we have recognized may outweigh the public's common law right of access."); *Select Portfolio Servicing v. Valentino*, No. C-12-0334 SI, 2013 WL 1800039, at *3 (N.D. Cal. Apr. 29, 2013) ("That [the parties] agreed among themselves to keep the settlement details private, without more, is no reason to shield the information from . . . the public at large."); And again, the parties cannot have it both ways—they cannot obtain continuing enforcement from an Article III court based on the premise that it furthers public and federal interests and also hide from public view key parts of the requested injunction to advance their private interests.

In sum, the Court finds that compelling reasons do not override the presumption of public disclosure. *See Foltz*, 331 F.3d at 1135. Therefore, the joint motion to seal is denied. Pursuant to Local Civil Rule 5(g)(6) and the parties' request, Dkt. No. 49 at 7, Eli Lilly may withdraw docket number 51 rather than unseal it.[3] "[I]f the Parties are bound and determined to keep the agreement confidential, they are free to enter into a private settlement and jointly stipulate to dismissal of the case." *Am. Prof'l Agency, Inc. v. NASW Assurance Servs.*, 121 F. Supp. 3d 21, 25 (D.D.C. 2013); *see also Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, No. 1:19-CV-3766-GHW, 2020 WL 7706741, *4 (S.D.N.Y. Dec. 29, 2020) ("[T]he Court expects that the parties to the Settlement Agreement were well aware of its importance to the ongoing litigation in this case.

---

[3] The parties' request to "cure" any defect, *id.*, is denied given that the parties are already on their second attempt at obtaining a consent judgment and permanent injunction, *see* Dkt. No. 45, and because "this process has already unnecessarily delayed proceedings," Dkt. No. 47. Moreover, Local Rule 5(g)(6)—and general motion practice—do not countenance unlimited bites at the proverbial apple as an alternative to unsealing.

ORDER DENYING UNOPPOSED MOTION FOR APPROVAL AND ENTRY OF CONSENT JUDGMENT AND PERMANENT INJUNCTION; DENYING JOINT MOTION TO SEAL - 9

[The Parties] cannot, by virtue of their private agreement, keep its terms secret, while asking the Court to act on it, and proposing that it be used as both sword and shield in the ongoing action.").

**B.      Consent Decree**

As the Court discussed in its September 2025 Order, a consent decree, unlike a stipulated dismissal pursuant to a settlement agreement, is a final judgment on the merits. Dkt. No. 45 at 3. "A consent decree is 'essentially a settlement agreement subject to continued judicial policing.'" *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)). Consent decrees require the Court to expend time and resources to supervise a private settlement agreement, *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994), so before approving a consent decree, district courts must ensure that it "is fair, reasonable and equitable and does not violate the law or public policy," *Sierra Club, Inc. v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990). Moreover, "[c]onsent decrees entered in federal court must be directed to protecting federal interests"—in other words, they "must further the objectives of the law upon which the complaint was based." *Frew*, 540 U.S. at 437. And because consent decrees are "strange hybrid[s]," *Brown v. Neeb*, 644 F.2d 551, 557 (6th Cir. 1981), of contracts that are also injunctions, *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932), they are "subject to the rules generally applicable to other judgments and decrees," *Frew*, 540 U.S. at 437 (quotation marks omitted). Thus, the court's supervision is constrained by the law of equity.

The rule requiring judges to ask whether a decree is "fair, reasonable and equitable," *Sierra Club, Inc.*, 909 F.2d at 1355 (9th Cir. 1990), is tied to Congress' specific decision to afford judges a specific, if malleable, form of remedial authority. *See* Judiciary Act of 1789, 1 Stat. 73, §§ 11, 16; *Trump v. CASA*, 606 U.S. 831, 841–42 (2025). Two important limiting principles arise from Congress's decision. First, the nature and scope of Defendants' alleged lawbreaking matter because, among other reasons, "a court of equity" can do no more than afford "complete relief for

the parties." *CASA*, 606 U.S. at 847. And "[t]he parties cannot," merely "by giving each other consideration, purchase from a court of equity a continuing injunction" that stretches beyond what the underlying law entails. *System Federation No. 91, Railway Employees' Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 651 (1961). Instead, "the District Court's authority to adopt a consent decree comes only from the statute which the decree is intended to enforce." *Id.* So although consent decrees are not strictly limited to the relief that might have been available had the parties litigated their case to judgment, the relief must address conduct within the "general scope of the case made by the pleadings." *Local No. 93, Intern. Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986) (citation omitted).

Second, and relatedly, federal equitable relief should follow a principle of remedial parsimony—stretching no further than necessary to enforce federal law. In that way, consent decrees must be "limited to reasonable and necessary implementations of federal law," *Horne v. Flores*, 557 U.S. 443, 450 (2009), and—like other equitable remedies—be "no more burdensome . . . than necessary," *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Lawful decrees extinguish unlawful conduct, while "decrees *exceed* appropriate limits if they are aimed at eliminating a condition that does *not* violate [federal law] or . . . flow from such a violation." *Milliken v. Bradley* ("*Milliken II*"), 433 U.S. 267, 282 (1977) (emphasis added). In other words, proper decrees follow the "settled rule that in federal equity cases the nature of the violation determines the scope of the remedy." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (quotation marks omitted). In equity, "the broader and deeper the remedy the plaintiff wants, the stronger the plaintiff's story needs to be." *CASA*, 606 U.S. at 854 (quoting Samuel L. Bray & Paul B. Miller, *Getting into Equity*, 97 Notre Dame L. Rev. 1763, 1797 (2022)).

Here, the proposed consent decree fails to meet these requirements. First, it is overbroad relative to Eli Lilly's claims. For example, the permanent injunction prohibits "Defendants, their officers, directors, shareholders, owners, agents, servants, employees, and attorneys, and all those in active concert or participation with them" from "engaging in *any activity* that is likely to cause confusion, cause mistake, or deceive or otherwise infringe *any rights of [Eli] Lilly in the [Eli] Lilly Marks or any similar mark*[.]" Dkt. No. 51-1 at 3–4 (emphasis added). And wholly independent of Defendants' advertisement of compounded tirzepatide products at issue in this case, Defendants are prohibited from "suggesting" that they are "*associated or connected in any way with [Eli] Lilly or its products*," or "[e]ngaging in *any* unfair competition with [Eli] Lilly[.]" *Id.* at 4 (emphasis added). Again, a consent decree must "spring from and serve to resolve a dispute within the court's subject-matter jurisdiction" and "within the general scope of the case made by the pleadings, and must further the objectives of the law upon which the complaint was based." *Local No. 93, Intern. Ass'n of Firefighters*, 478 U.S. at 525. Here, though, if Eli Lilly's complaint provided an inch, the proposed decree takes a mile.

Second, as the Court flagged in its prior order, "[t]o the extent that the parties intend for the terms within the 'confidential settlement agreement' to be enforceable through a consent decree, all such terms must be included in the proposed Consent Order and Decree." Dkt. No. 45 at 5 (quoting *Mulhern*, 2019 WL 6307233, at *2). "The consent decree is an injunction" and therefore must comply with Rule 65(d). *Gates v. Shinn*, 98 F.3d 463, 467–68 (9th Cir. 1996). As noted above, Rule 65(d) requires that consent decrees be self-contained, without reference to some "other document."[4] Thus, "[c]ourts must find the meaning of a consent decree 'within its four

[4] *See also Henry v. Omoi, Inc.*, No. 25-CV-3151, 2026 WL 636799, at *7 (N.D. Ill. Mar. 6, 2026) ("An injunction must stand on its own two feet, without resting on the content of some other document. An injunction must give a reader everything that he or she needs to know to figure out the underlying rules that the parties must follow, without digging anywhere else."); *Mulhern v. ADT Sec. Servs., LLC*, No. 2:18-CV-229-TLS, 2019 WL 6307233, at *2 (N.D. Ind. Nov. 25, 2019) (because "a consent decree functions as an injunction, the parties must include all the terms

ORDER DENYING UNOPPOSED MOTION FOR APPROVAL AND ENTRY OF CONSENT JUDGMENT AND PERMANENT INJUNCTION; DENYING JOINT MOTION TO SEAL - 12

corners.'" *Gates*, 98 F.3d at 468. "If an injunction does not clearly describe prohibited or required conduct, it is not enforceable by contempt." *Id.* In violation of Rule 65(d), Eli Lilly did not include all terms of the settlement agreement in the proposed consent decree. *Compare* Dkt. No. 50-2 (proposed consent decree) *with* Dkt. No. 51-2 (sealed Settlement Agreement). Instead, its proposed five-page decree adds at the end that the Court will retain jurisdiction to "entertain such further proceedings and to enter such further orders as may be necessary or appropriate to implement and/or enforce the provisions of . . . the Parties' [32-page] confidential settlement agreement, including disputes related thereto." Dkt. No. 50-2 at 4–5.

Furthermore, the confidential settlement agreement contains a much broader injunction than the already overbroad text of the proposed decree, which oversteps not only Rule 65(d) but also this Court's equitable power. For example, despite Eli Lilly's argument that its claims were "not based on Alderwood violating the FDCA," Dkt. No. 28 at 3, the decree prohibits Defendants from "obtain[ing], advertis[ing], or distribut[ing] compounded tirzepatide products in violation of applicable law"—regardless of whether such activities tread on the trademarked products at issue in this case—and Defendants must "report to the appropriate State and Federal regulators all adverse events of which [they] become aware that relate to compounded tirzepatide products that [they] sell, offer for sale, or distribute." Dkt. No. 51-2 at 5–6. Defendants also must "provide full cooperation and assistance in any future investigations, proceedings, or litigations concerning compounded tirzepatide, including without limitation providing truthful information and documentation to [Eli] Lilly relating to such purchases and providing truthful testimony regarding such purchases by deposition or live testimony before any court or other tribunal having the power to compel such testimony." *Id.* at 6. Further unmoored from the claims in the complaint is the

---

explicitly in the text of the proposed Consent Decree").

ORDER DENYING UNOPPOSED MOTION FOR APPROVAL AND ENTRY OF CONSENT JUDGMENT AND PERMANENT INJUNCTION; DENYING JOINT MOTION TO SEAL - 13

requirement that the parties shall not "make any disparaging or negative comments or statements regarding the other, regarding each other's products or services[.]" *Id.* at 8. "[W]ithout an identifiable legal violation to resolve, no equitable remedy may follow." *United States v. Louisville Jefferson Cnty. Metro Gov't*, No. 3:24-CV-722-BJB, 2025 WL 4675616, at *8 (W.D. Ky. Dec. 31, 2025) (citing *Horne*, 557 U.S. at 45).

Third, an injunction must "describe in reasonable detail . . . the act or acts restrained or required," *see* Fed. R. Civ. P. 65(d)(1), and even if the above-described injunctive prohibitions were not leaps and bounds beyond the scope of the case and the objectives of the law upon which the complaint was based, their terms "fail[] to draw clear lines," leaving "plenty of room for disagreements" and "invit[ing] future trouble." *Henry*, 2026 WL 636799, at *8. "[T]he specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Vasquez Perdomo v. Noem*, 148 F.4th 656, 679 (9th Cir. 2025) (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)).

Fourth, the settlement agreement obligates Defendants to pay Eli Lilly a certain sum in exchange for Eli Lilly's release of claims against them. Dkt. No. 51-2 at 7. Eli Lilly makes no effort to explain how this sum is fair, reasonable, or equitable, and the Court will not devise an assessment for it, especially at this nascent stage of the case. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").

Finally, the only response Eli Lilly can muster to the Court's query as to why a consent decree—rather than a stipulated dismissal—is appropriate is to simply recite the function of a consent decree. Dkt. No. 50 at 13 ("A consent judgment is the better option to effectuate the careful

ORDER DENYING UNOPPOSED MOTION FOR APPROVAL AND ENTRY OF CONSENT JUDGMENT AND PERMANENT INJUNCTION; DENYING JOINT MOTION TO SEAL - 14

allocation of rights struck by the parties in the Settlement Agreement, because it results in a court order that enforces the terms of the Settlement Agreement."). Eli Lilly warns that a stipulated dismissal "deprives the court of jurisdiction when filed[.]" *Id.* at 14. So what? This does not explain why the Court should be saddled with perpetual oversight over Eli Lilly's private deal or why a future breach of contract action would somehow be inadequate to address lack of compliance with the settlement agreement.

Eli Lilly also nonsensically asserts that its proposed decree "lessen[s] burdens on litigants and the Courts." Dkt. No. 50 at 13. "Certainly a stipulated dismissal would be the best procedure by which this matter could have been 'quickly wrapped up,' rather than the path the parties have embarked upon that has involved protracted briefing and multiple court orders and ultimately will require ongoing court supervision of these decrees." *Duncanson v. Wnc of Cincinnati LLC*, No. 116CV00788SEBDML, 2020 WL 4043175, at *3 (S.D. Ind. July 17, 2020); *see also Henry*, 2026 WL 636799, at *9 (observing that "[i]t is hard to see why this Court should get in the middle of this dispute and oversee [defendant's] website" since "[t]he parties could achieve the same result with a simple settlement agreement, without a consent decree."); *United States ex rel. Tri-City Elec. Co. of Iowa v. Alacran/O & SJV, LLC*, No. 4:11-cv-04109-SLD-JEH, 2014 WL 5473138, at *4 (C.D. Ill. Oct. 29, 2014) (rejecting the parties' argument that their proposed consent decree was "appropriate because it avoids [the plaintiffs] having to come back to the Court" because entering a consent decree instead of a stipulation of dismissal actually "avoids nothing" (internal quotation marks omitted)). "The failure to explain the need for a consent decree is an independent reason to deny the request." *Henry*, 2026 WL 636799, at *9; *see also Cincinnati Ins. Co. v. Sherman*, No. 4:24-CV-04195-SLD-RLH, 2026 WL 1005066, at *2 (C.D. Ill. Apr. 14, 2026) (rejecting proposed decree where movant did not explain "why entering this consent decree is a good use of the Court's limited resources").

ORDER DENYING UNOPPOSED MOTION FOR APPROVAL AND ENTRY OF CONSENT JUDGMENT AND PERMANENT INJUNCTION; DENYING JOINT MOTION TO SEAL - 15

Moreover, "[r]etaining ongoing jurisdiction . . . *ad infinitum* imposes obvious burdens in the form of judicial oversight and management." *Duncanson*, 2020 WL 4043175, at *3; *see also Matter of Mem'l Hosp. of Iowa Cty., Inc.*, 862 F.2d 1299, 1302 (7th Cir. 1988) ("[I]t is inappropriate to approve a consent decree that calls for a profligate commitment of the court's resources[.]"). "A federal judge must be concerned about other cases," as "[e]very hour consumed administering a consent decree is an hour taken from other litigants, who must wait in a longer queue." *Kasper v. Bd. of Election Comm'rs*, 814 F.2d 332, 341 (7th Cir. 1987); *see also Henry*, 2026 WL 636799, at *8 ("Enlisting a district court to police a settlement imposes a cost on every other litigant in every other case on that court's docket. The opportunity cost is real, and is paid by everyone else."). Eli Lilly fails to explain why entering this consent decree is a good use of the Court's limited resources. "Given the already scarce resources of the Court to handle cases actually requiring judicial resolution, pledging resources to monitor the settlement of a case of entirely unknown and disputed merit is not appropriate." *Funimation Ent. v. Timmons*, No. 13-CV-00533-MSK-MJW, 2014 WL 6873061, at *1 (D. Colo. Oct. 24, 2014); *see also* ProPublica, Habeas Tracker, https://projects.propublica.org/habeas-tracker/ (last visited June 3, 2026); Mike Carter, *WA federal courts flooded with immigration cases*, Seattle Times, Apr. 2, 2026, https://www.seattletimes.com/seattle-news/law-justice/wa-sees-historic-surge-of-immigrants-challenging-their-detention/ (last visited June 3, 2026).

## C.    Permanent Injunction

Eli Lilly also requests that the Court "enter a Permanent Injunction to which Defendants have consented." Dkt. No. 50 at 5. This request is inextricably intertwined with the request for consent decree, *see generally* Dkt. No. 50, which the Court has denied. *See, e.g.*, *CMI Kentucky*, 2009 WL 5216841, at *3 ("[T]he request for a permanent injunction also depends on the Court's approval of the consent judgment. As the Court has declined to adopt many aspects of the proposed

ORDER DENYING UNOPPOSED MOTION FOR APPROVAL AND ENTRY OF CONSENT JUDGMENT AND PERMANENT INJUNCTION; DENYING JOINT MOTION TO SEAL - 16

consent judgment, the Court will not approve and enter a permanent injunction at this time."). Therefore, the Court denies Eli Lilly's request for a permanent injunction on this basis.

Additionally, Eli Lilly failed to establish that a permanent injunction would be appropriate in this case. Unlike in its first motion, Eli Lilly discusses in its renewed motion the relevant factors for issuance of a permanent injunction—that the movant must show that (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of the hardships, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction, Dkt. No. 50 at 12–13 (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).[5] Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)); *see also Phillips v. Apple Inc.*, 725 F. App'x 496, 497–98 (9th Cir. 2018) ("Standing must be shown with respect to each form of relief sought," and a plaintiff seeking injunctive relief "must demonstrate that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." (citation modified)).

Eli Lilly fails to explain how there is a cognizable danger that Defendants will harm it in a similar way in the future. Indeed, that Defendants have voluntarily ceased the activity that is subject to the complaint pursuant to the parties' private settlement agreement "cast[s] doubt on the

---

[5] In the prior motion for a permanent injunction, the parties did not address these factors, stating only that "'there is good cause for the Court to grant this motion and enter the Permanent Injunction' because '[t]he parties have agreed to resolve this case and have entered into a binding settlement agreement.'" Dkt. No. 45 at 6 (quoting Dkt. No. 44 at 2).

ORDER DENYING UNOPPOSED MOTION FOR APPROVAL AND ENTRY OF CONSENT JUDGMENT AND PERMANENT INJUNCTION; DENYING JOINT MOTION TO SEAL - 17

necessity of a *permanent* injunction, subject to the continued supervision and enforcement of the court[.]" *Nutramax Lab'ys, Inc. v. Abumayyaleh Bros LLC*, No. 1:24-CV-01047-SEB-MKK, 2025 WL 107670, at *2 (S.D. Ind. Jan. 15, 2025); *see* Dkt. No. 50 at 12 ("Defendants face no injury from entry of the proposed Consent Judgment because they have stipulated to its terms[.]"). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (alteration omitted) (internal quotation marks and citation omitted). An injunction is not warranted to protect Eli Lilly "in light of the fact that [it] has not shown a real danger of future misconduct by [Defendants]." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 817 F. App'x 443, 445 (9th Cir. 2020); *see also Kansas v. Nebraska*, 574 U.S. 445, 467 (2015) (plaintiff failed to show a cognizable danger of recurrent violation where defendant's "new compliance measures, so long as followed, [we]re up to the task of keeping [it] within" legal limits).

Furthermore, Eli Lilly has not shown that the public interest "would not be disserved by a permanent injunction." *eBay*, 547 U.S. at 391. Eli Lilly avers that "the injunction requested . . . is narrowly tailored to prevent consumer confusion and deception in the market for tirzepatide-based medications, which furthers the public interest" and "[t]he injunction directly addresses the risk that consumers could be confused or deceived into believing that compounded tirzepatide products are equivalent to, or associated with, Lilly's FDA-approved MOUNJARO® and ZEPBOUND® products." Dkt. No. 50 at 12–13. But as discussed above, the injunction is not narrowly tailored, and although the public likely has an interest in avoiding confusion between two companies' products and preventing confusion and deception in the marketplace, Eli Lilly has not shown why the issuance of a *permanent injunction* is necessary to serve that interest, especially considering the public cost of such an injunction. Given the posture of this case, a stipulated dismissal pursuant

ORDER DENYING UNOPPOSED MOTION FOR APPROVAL AND ENTRY OF CONSENT JUDGMENT AND PERMANENT INJUNCTION; DENYING JOINT MOTION TO SEAL - 18

to the parties' settlement agreement would serve these same purposes without using the judiciary's limited resources. Indeed, as noted above, a permanent injunction is not necessary for Eli Lilly to enforce the settlement agreement should Defendants violate it in the future. *See Kokkonen*, 511 U.S. at 382 ("[E]nforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction."). "A judge has obligations to other litigants, who may depend on the availability of [their] time, and to members of the public whose interests may not be represented by the litigants." *Kasper*, 814 F.2d at 338.

## III.   CONCLUSION

A district court "is more than 'a recorder of contracts' from whom parties can purchase injunctions; it is an organ of government constituted to make judicial decisions." *Local No. 93, Int'l Ass'n of Firefighters*, 478 U.S. at 525 (internal quotation omitted). And because a consent decree "is no ordinary contract," requiring "continuing supervision by the district court," "[j]udges need a good reason, one in addition to the parties' say so, before diverting attention from other business in this fashion." *Evans v. City of Chicago*, 10 F.3d 474, 477 (7th Cir. 1993).

As detailed above, Eli Lilly has failed in numerous respects to satisfy the requirements for issuing a consent decree. "A district judge need not lend the aid of the federal court to whatever strikes two parties' fancy." *Kasper*, 814 F.2d at 338. The Court DENIES Eli Lilly's Motion for Approval and Entry of Consent Judgment and Permanent Injunction, Dkt. Nos. 50–51.

The Court also DENIES the parties' Joint Motion to Seal. Dkt. No. 49. Pursuant to Local Rule 5(g)(6) and the parties' request, Dkt. No. 49 at 7, Eli Lilly may withdraw docket number 51 rather than unseal it. The Clerk is directed to unseal docket number 51 if the parties do not withdraw it within seven days of this Order.

ORDER DENYING UNOPPOSED MOTION FOR APPROVAL AND ENTRY OF CONSENT JUDGMENT AND PERMANENT INJUNCTION; DENYING JOINT MOTION TO SEAL - 19

The parties are directed to file a stipulation and proposed order of dismissal, or alternatively, a joint status report no later than June 17, 2026.

Dated this 3rd day of June, 2026.

Lauren King
United States District Judge